BENTON, J.,
dissenting.
“In order to proceed against a defendant who has been adjudicated incompetent, the trial court first must hold a hearing to determine whether the defendant’s competency has been restored, review evidence from experts during the hearing, make an independent determination that the defendant’s competency has been restored, and enter a written order to that effect.” Ross v. State, 155 So.3d 1259, 1259 (Fla. 1st DCA 2015). “If, at any time after ... commitment [for treatment to restore a defendant’s competence to proceed], the court decides, after hearing, that the defendant is competent to proceed, it shall enter its order so finding and shall proceed.” Fla. R. Crim. P. 3.212(c)(7). But not otherwise. In the present case, the trial court never took testimony, never received any written report in evidence, and never determined whether the defendant was competent to proceed. Accordingly, I respectfully dissent.
Mr. Hunter had been adjudicated incompetent to proceed in January of 2012, and committed at that time for treatment to restore competence. A competency evaluation report, prepared on June 18, 2012, catalogued hospitalizations for psychiatric reasons beginning at age fourteen, including an admission to Florida State Hospital after being adjudicated not guilty by reason . of insanity on an earlier criminal charge. The report also noted numerous suicide attempts, and that he had cut himself nine times during his current commitment. (His conduct resulted in special supervision by at least one and sometimes two. staff members “at all times ... over the past four months,” and in his inability to attend classes or group therapy. He was instead provided individual therapy by a “Psychology Intern.”) The competency evaluation report was attached to a letter the Department of Children and Families sent to the trial court, also in June of 2012, indicating he was competent to proceed.[2]
Relying in part on the fact that a competency hearing was noticed for July 23, 2012, the majority opinion concludes that a competency hearing actually took place on that date,[3] although it acknowledges that *1018 the trial court “made no determination” of competence because defense counsel sought reevaluation of Mr. Hunter. At the July 23, 2012 hearing, defense counsel clearly stated there was “still a question about sanity, sanity at the time, and sanity now.” Defense counsel requested that Mr. Hunter be evaluated both as to insanity at the time of the offense and as to insanity or incompetence “at the present time.” After a brief discussion regarding “who pays” for an evaluation, defense counsel stated “he’s insane at this time. I was told that was a possibility.” No ruling on competence to proceed was made on July 23, 2012, however.
On August 16, 2012, a short hearing or status conference was held.[4] At the start of this proceeding, the following exchange occurred:
MR. HILLEY: Judge, I got another letter from Mr. Barnes, that inside medical isolation, he’s inside the isolation of the isolation because I came down to see him and he was strapped down because he tried to kill himself again.
I couldn’t see him the other day. There’s indication, my motion for — he was insanity (sic) at the time — but I’ve been talking with Mr. Barnes. I think he’s competent to proceed and I’ve never heard of this before and I’m trying to do research on it, Judge.
He’s competent to proceed for competency but he still could be insane at the time, today.
THE COURT: Okay.
MR. HILLEY: And can I file, I guess I would file a motion to ask for an insanity, presently, if the State was going to object or I can just put the order in. I mean, that has no bearing on it.
MR. REED: Proceed, Judge. I think if he wants to do something like that just for your own knowledge, you’d have to pay for it yourself. I don’t think the JAC is going to pay for something like that.
MR. HILLEY: If he’s insane right now then he can’t be tried.[5]
*1019 Defense counsel’s statement that Mr. Hunter was “competent to proceed for competency” was not a stipulation or concession that Mr. Hunter was competent to assist in his defense or to enter a plea.
The trial court’s interjection in response, “Okay,” (which was immediately followed by defense counsel’s stating he “would file a motion to ask for an insanity, presently, if the State was going to object”) cannot fairly be construed as a finding that Mr. Hunter was competent to stand trial. Cf. Boone v. State, 805 So.2d 1040, 1041 (Fla. 4th DCA 2002) (remanding to the trial court for entry of a written order where the “trial court clearly announced its finding that Boone was competent to stand trial” but failed to enter a written order). Indeed, the trial court began seven of his twenty-one utterances[6] on August 16, 2012, with the word “Okay.”
Nor does the record of the status conference or hearing reflect any basis for a finding that Mr. Hunter was competent to proceed. As our supreme court has recently explained:
Generally, a proper hearing to determine whether competency has been restored after a period of incompetence requires “the calling of court-appointed expert witnesses designated under Florida Rule of Criminal Procedure 3.211, a determination of competence to proceed, and the entry of an order finding competence.” ... “[Wjhere the parties and the judge agree, the trial [cjourt may decide the issue of competency on the basis of the written reports alone.” Nevertheless, these written reports are advisory to the trial court, “which itself retains the responsibility of the decision.” Accepting a stipulation improperly absolves the trial court from making an independent determination regarding a defendant’s competency to stand trial.
We note that our prior cases, in which we held that the trial court retains the responsibility to determine if the defendant is competent, generally involved conflicting testimony or evidence regarding a defendant’s competency. However, nothing in our precedent or the State’s argument persuades us that a defendant can stipulate to the ultimate issue of competency, even where the written reports reach the same conclusion. Even in a situation where all the experts opine that a defendant is competent, the trial court could presumably disagree based on other evidence such as the defendant’s courtroom behavior or attorney representations. Further, the language of rule 3.212(c)(7) and rule 3.212(b) discussed above does not allow parties to stipulate to the issue of competency. In particular, the rules do not contemplate such stipulations where the trial court has previously concluded that a particular defendant is incompetent and his competency has yet to be restored. Thus, based on our precedent and the procedural rules for competency determinations, a defendant cannot stipulate that he is competent, particularly where he has been previously adjudicab- *1020 ed incompetent during the same criminal proceedings. Further, if a trial court finds that a defendant is competent to proceed, it must enter a written order so finding.
Dougherty v. State, 149 So.3d 672, 677 (Fla.2014) (citations omitted) (footnotes omitted). See also Macaluso v. State, 12 So.3d 914, 915 (Fla. 4th DCA 2009) (“If the Rule wanted lawyers to be able to stipulate to restored competency without an evidentiary hearing, it would have so stated in explicit terms.”), approved by Dougherty, 149 So.3d at 679.
“These requirements [including the review of ‘evidence from experts during1 a competency hearing] cannot be waived by a stipulation. Because there is no evidence in the record that the trial court conducted a competency hearing, reviewed evidence from any examining physicians, or made an oral or written finding that appellant had been restored to competence, appellant was presumed incompetent to proceed at any material stage, rendering his plea [here trial and conviction] invalid as a matter of law and subject to challenge for the first time on direct appeal.” Ross, 155 So.3d at 1259-60 (citations omitted). In the present case, even if the trial court’s “Okay” could be deemed acceptance of some (in fact nonexistent) stipulation by defense counsel, it would be legally insufficient. Dougherty, 149 So.3d at 678.[7]
The trial court did not make “an independent determination regarding [Mr. Hunter’s] competency to stand trial.” Id. Although there was a brief reference to the competency evaluation report during the July 23, 2012 hearing, there was no stipulation (during either the July 23, 2012 hearing or the August 16, 2012 hearing) that the trial court could rule on the question of competency to proceed based on a written report alone. In fact, there is no indication in the transcript of either hearing that any written report was ever offered or admitted into evidence.
In S.B. v. State, 134 So.3d 528, 529 (Fla. 4th DCA 2014), defense counsel and the state stipulated to the defendant’s competency, but there was no stipulation to the contents or to the admission of the doctor’s report for the determination of competency. Nor was there any agreement to decide the issue of competency on the basis of written report(s) alone. Without further hearing or evidence, the trial court entered a written order finding that the defendant was competent to proceed. The Fourth District reversed: “Although it can be argued that by stipulating to the report’s determination of competency, the parties stipulated to the report and agreed to determine competency based on the report alone, there is nothing in the case law to suggest that such implicit stipulations and agreements are sufficient to satisfy rule 3.212. Therefore, the trial court erred in its finding of Defendant’s competency.” Id. at 530 (citations omitted).
*1021 In Macaluso, 12 So.3d at 915, as here, the defendant was adjudicated incompetent to stand trial and committed for treatment to restore competence. At a hearing conducted five months later, his attorney advised the court that he had since been found competent based on evaluations that were obtained by the Public Defender’s Office. The trial court thereupon declared the defendant competent to stand trial, “[wjithout further hearing or evidence.” Id. The Fourth District reversed, concluding “the competency issue was improperly decided” and stating the case was “returned to its status before the trial judge spontaneously declared defendant competent without hearing or evidence.” Id. See also Roman v. State, 2015 WL 630192, 40 Fla. L. Weekly D421, D422 (Fla. 2d DCA Feb. 13, 2015) (noting, in reversing convictions entered after the defendant was adjudicated incompetent to proceed, that “the parties did not stipulate to have the trial court decide Roman’s competency on the basis of experts’ reports”).
It is “entirely clear” from the record before this court that the trial court did not make the requisite determination of Mr. Hunter’s competency. See Dougherty, 149 So.3d at 676 (“In Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the United States Supreme Court recognized that ‘the failure to observe procedures adequate to protect a defendant’s right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.’ ”); State v. Tait, 387 So.2d 338, 341 (Fla.1980) (same). Because the trial judge never conducted a true competency hearing, and never made a determination that Mr. Hunter was competent to proceed, Mr. Hunter remained incompetent to proceed, as a matter of law.
The conviction and sentence should be reversed, and the case should be remanded for a new trial once it is determined that the defendant has regained competency to proceed.

. The trial court observed: "One thing that was interesting is that, I read through the report, and I saw different findings in there. But I didn’t see the strong language that there was in the cover letter that was done by the staff assistant, not the same doctor. The staff assistant says, competent to proceed, no longer meets criteria. But unless I just overlooked it, I didn’t see that in the report. I saw again, a lot of different findings but I never saw a real firm conclusion. But again, it was a lot of pages and I may have missed it.”

. The trial court docket entry for July 23, 2012, indicates the following: "COURT RE-SÚLT: HEARING HELD;” "EVALUATION TO BE PERFORMED TO DETERMINE SANITY AT TIME OF OFFENSE;” "CALENDAR STATUS DATE SET FOR 08/03/2012;” *1018 "DOCKET DAY FELONY SET FOR 08/16/2012;” and “CRIMINAL JURY TRIAL FELONY SET FOR 08/20/2012.”

. There were two docket entries between July 23 and August 16, 2012. The trial court docket entry for August 3, 2012, states only "COURT RESULT: HEARING HELD.” The trial court docket entry for August 15, 2012, indicates: "CORRESPONDENCE TO THE COURT FROM FORENSIC MENTAL . HEALTH SPECIALIST RE: BEHAVIOR (NON PUBLIC)” and "MOTION FOR RE-PSYCHOLOGICAL EVALUATION AND APPOINTMENT OF EXPERT WITNESS.”

. The transcript continues:
MR. REED: No, it’s incompetent, right now or insane at the time of the offense. It's two different—
MR. HILLEY: No, those are the procedurally. We've never had one insane, right now in competency. I’m trying to do the research, Judge, and — and cause it's just I've never had that ever.
MR. REED: Well, if you could set this for a hearing, Judge, so — •
MR. HILLEY: We do have the order — -it’s either to you or it’s on the way to you.
THE COURT: You got a motion that's coming to me?
MR. HILLEY: No. The order for the insanity at the time.
THE COURT: Okay.
MR. HILLEY: And he's not objecting to that.
MR. REED: No, we're not objecting to that, Judge. It's insanity, currently.
THE COURT: Right.
MR. HILLEY: And I’ve never had that insane now but competency. But—
THE COURT: Okay. So what do you want to do?
MR. HILLEY: We want to continue it, Judge.... We have the order for the insanity at the time and then I’m going to do the research and see if there is, how do I approach that now. I'll give it to the State if there’s some case law on it, we’ll just send *1019 an order over to have him evaluated for insanity now if it hasn't any bearing.
If my research says it doesn't have any bearing, I’m going to — I’ll just announce it that my research shows that we’re going to have to proceed with trial.
THE COURT: Okay. So we’ll just set it for a status, is that right?
The trial court's docket entiy for August 16, 2012, indicates: "COURT RESULT: CONTINUED” and "STATUS CALL DATE SET FOR 08/29/2012.”

. “Okay” was the trial court's complete statement on four of these seven occasions, in-eluding the occasion to which the majority opinion refers. Additionally, the trial court concluded two other statements with "Okay.”

. The majority opinion’s reliance on Martinez v. State, 851 So.2d 832 (Fla. 1st DCA 2003), is misplaced. There, we addressed only the defendant's contention that the trial court erred in failing to enter a written order finding him competent to proceed. Id. at 833-34 (concluding that "the pertinent provisions of the [Criminal Appeal Reform Act of 1996 did not] dispossess this court from jurisdiction to remand to the trial court for the sole purpose of memorializing in writing an oral finding made by the court” and that "[n]either the defendant nor the state has contended on appeal that" the trial court’s statement, "All right, sir,” after defense counsel informed the court that two doctors had concluded the defendant was competent to proceed, "was anything less than a finding of competency”). In addition, after Dougherty v. State, 149 So.3d 672 (Fla.2014), a stipulation is inadequate to support such a finding.